## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

TRACY MARIE RIOS                                                                           PLAINTIFF

v.                                              No. 5:12CV00156 JLH

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]                                                          DEFENDANT

### OPINION AND ORDER

On December 29, 2008, Tracy Marie Rios applied for disability insurance benefits and supplemental security income. Tr. at 143, 146. She alleged disability beginning August 24, 2007. *Id.* at 42.[2] Her application was denied initially and on reconsideration. *Id.* at 85, 89, 98, 100. Rios was then granted a hearing before an Administrative Law Judge, at which she and her father testified. *See id.* at 39-80. On September 2, 2010, the ALJ[3] concluded that Rios was not disabled under the Social Security Act. *See id.* at 20-34. The Appeals Council then denied Rios's request for review, making the ALJ's determination the Commissioner's final decision for the purpose of judicial review. *See id.* at 1; 42 U.S.C. § 405(g). Rios commenced this action on April 27, 2012, seeking judicial review of the Commissioner's decision.

### I.

When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the Commissioner made a legal error. *See Long v. Chater*, 108 F.3d 185, 187

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted for Michael J. Astrue pursuant to Fed. R. Civ. P. 25(d).

[2] The denial of an earlier disability application, however, actually foreclosed Rios's eligibility before December 27, 2007. *See id.* at 165.

[3] The Honorable Eliaser Chaparro.

(8th Cir. 1997) (citing, *inter alia*, 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance; it means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence detracting from the decision as well as evidence supporting the decision, but the Court may not reverse the decision simply because substantial evidence supports a contrary decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The regulations provide a five-step process for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520 and 416.920.

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). "The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

2

**II.**

Rios was forty-nine years old at the time of her hearing. Tr. at 43. Her last substantial gainful activity was as a butcher/meat wrapper for a grocery store. *Id.* at 170, 176, 269, 334. She reported that she stopped working on August 24, 2007, due to constant pain and the inability to use her hands. *Id.* at 169. Rios asserted that she was disabled because of numbness in her hands, shortness of breath, back problems, arthritis, depression, and high blood pressure. *Id.* She maintained she could not use her hands or stand for very long, and she also complained about her knees being bad. *Id.*

At step one of the disability determination process, the ALJ determined that Rios had not engaged in substantial gainful activity since August 24, 2007. *Id.* at 22. At step two, the ALJ determined that Rios's ability to work was severely impaired by "lumbar degenerative disc disease, bilateral knee pain, bilateral carpal tunnel syndrome status post right release, obesity, and depression." *Id.* at 23. At step three, the ALJ found that Rios's impairments did not meet or equal a listed impairment. *Id.* At step four, the ALJ determined that Rios could do a full range of light work, although he noted that she could not frequently bend or crouch and that she needed to be able to sit or stand at will. *Id.* at 24. He also noted that she needed to "work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is little for routine, but detailed for non-routine." *Id.* After questioning a vocational expert about available work, the ALJ determined that Rios could work. *Id.* at 33-34. The ALJ thus concluded that Rios was not disabled and denied the application. *Id.*

**III.**

Rios argues that the ALJ erred regarding:

> (1) development of the record,
> (2) evaluation of her credibility,
> (3) the determination of her residual functional capacity, and
> (4) the consideration of new evidence.

Based on these contentions, Rios argues that substantial evidence does not support the Commissioner's conclusion that she is not disabled.

**1.  DEVELOPMENT OF THE RECORD**

Rios first argues that the ALJ failed to develop the record adequately. *See* Document #14, at 15-16. A claimant who argues that an ALJ failed to fully develop the record bears a heavy burden; she "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 Fed. Appx. 200, 204 (8th Cir. 2007). On this point, Rios only contends that the ALJ failed to take into account testimony elicited from the vocational expert during cross-examination at the hearing. While the ALJ does indeed appear not to have credited this testimony, as it is not discussed in his opinion, the testimony was not excluded from the record in any way. *See* Tr. at 77-79. Thus, the ALJ did not err in developing the record. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("[W]hile the ALJ was required to develop the record fully, she was not required to provide an in-depth analysis on each piece of evidence."); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

**2.     CREDIBILITY**

Rios contends that the ALJ erred in discounting her credibility concerning her limitations and the disabling nature of her pain. *See* Document #14, at 19-21. An ALJ has a duty to assess the claimant's credibility. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). In evaluating Rios's credibility, the ALJ explicitly followed the proper two-step process and considered the required factors. *See* Tr. at 24-33 (citing, *inter alia*, SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Thus, the only question before the Court in regard to this argument is whether substantial evidence supported the ALJ's credibility evaluation.[4]

The ALJ discounted Rios's credibility based on his finding of inconsistency between her complaints and the objective medical evidence. *See* Tr. at 24-32. An ALJ may discount complaints of pain and limitation if they are inconsistent with the evidence as a whole. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001). Medical evidence in the record does indeed contradict, or at least call into question, Rios's assertion of disabling pain so severe that she cannot work.

Rios asserts that she is disabled in large part because of severe back pain. However, as the ALJ noted, while the existence of Rios's back pain is generally supported by the record, the medical evidence does not support her claims as to the disabling nature of the pain.

First, a January 11, 2008, x-ray of Rios's cervical spine revealed the following:

---

[4] Admittedly, Rios also argues that substantial evidence in the record supports her credibility regarding her pain symptoms. As noted above, however, the Court may not reverse the Commissioner's decision merely because substantial evidence supports a different conclusion. *See Sultan*, 368 F.3d at 863; *Woolf*, 3 F.3d at 1213. Rather, the Court can only reverse the Commissioner when substantial evidence *does not* support the Commissioner's decision. *See Long*, 108 F.3d at 187.

> FINDINGS:
> C1-C6 are well visualized. The superior endplate of C7 is seen. No evidence of fracture or dislocation is seen involving the visualized cervical spine. The cervical spine is in good alignment. The vertebral body heights and disc spaces are well maintained. The prevertebral soft tissues are normal in appearance. The odontoid is normal in appearance. The lateral masses are well-aligned.
>
> IMPRESSION:
> 1. INCOMPLETE VISUALIZATION OF THE CERVICAL SPINE.
> 2. NO EVIDENCE OF FRACTURE OR DISLOCATION IS SEEN INVOLVING C1-C6.

Tr. at 282. In short, the x-ray gave no indication of a source of any pain, much less disabling pain.[5]

Second, a January 2, 2009, MRI of Rios's lumbar spine indicated that Rios had "mild" disc bulges at the L4-L5 and L5-S1 levels and that the rest of her lumbar spine—including her remaining intervertebral discs, thecal sac, and neural foramina—were "unremarkable" and "without evidence of compromise." *Id.* at 325. While this MRI does provide a possible basis for Rios's lower back pain, it simply does not support the disabling level of pain that she claims. *See Williams v. Astrue*, 383 F. Appx. 585, 586 (8th Cir. 2010) (per curiam) (affirming ALJ's finding that claimant was "less than fully credible" in her assertion of disability where she had only "mild disc bulges with lumbar spine degenerative changes"); *Ware v. Barnhart*, 123 F. Appx. 335, 337 (10th Cir. 2005) ("[An] MRI showed only a mild annular bulge at two points and was otherwise negative. The MRI report indicates also that the disc spaces in Ms. Ware's spine were well maintained and there was no neural impingement. As a result, the ALJ found that Ms. Ware's complaints of disabling back pain were not supported by credible facts. The ALJ's RFC determination is supported by substantial evidence." (citations omitted)).

Third, an x-ray of Rios's lumbar spine on April 30, 2009, revealed the following:

---

[5] Moreover, Rios's physical exam at that same visit, albeit performed by a student, indicated that she was in no acute distress and had normal mobility in her spine, with no deformities. *Id.* at 287.

> Findings show early marginal osteophytes.  There is mild osteopenia of the bones.  Significant reactive bony sclerosis is noted at the articular facets.  No evidence of fracture seen on this exam.
>
> Impression: Degenerative changes of the lumbar vertebra.

Tr. at 340.  "Normal wear and tear [and] mild degenerative changes are to be expected." *Leitner v. Comm'r Soc. Sec. Admin.*, 361 F. Appx. 876, 878 (9th Cir. 2010) (affirming ALJ's finding of adverse credibility).  Thus, again, while this x-ray provides some evidence of a source of back pain, it does not support Rios's claims of total disability.

Rios also asserts that her depression contributes to her disabled condition.  As the ALJ noted, however, Rios visited a licensed psychologist on April 23, 2009, and the psychologist concluded that she appeared to be experiencing "mild to moderate depression."  Tr. at 333-36.  The effects of this depression, the psychologist found, were as follows:

> The claimant's adaptive functioning appears to remain intact.
> The claimant appears able to communicate in a socially adequate manner.
> The claimant is able to communicate in an intelligible manner.
> The claimant's ability to cope with the demands of work like tasks on a regular basis appears to be unimpaired.
> The client's ability to sustain concentration with basis tasks appears to be mildly impaired.
> The client appears to lack the ability to remain persistent with tasks is unimpaired [sic].
> The client appears to be able to complete tasks within a reasonable amount of time.
> The client appears to be capable of managing her funds.

*Id.* at 335-36.  As with her back pain above, this diagnosis acknowledges that Rios is affected by depression.  The intensity of the depression, however, is inconsistent with a claim of total disability.  *See Zimmerman v. Astrue*, 288 F. Appx. 931, 936-37 (5th Cir. 2008) ("[A]lthough there was some conflicting evidence, the ALJ's conclusions about Zimmerman's mental impairments was supported by the substantial evidence provided . . . [in part by psychologist] Dr. Lenert's [mild description of

7

Zimmerman's impairments]."); *Gawrys v. Astrue*, No. EDCV 11-0634, 2012 WL 1198547, at *2 (C.D. Cal. Apr. 6, 2012) (including, as substantial evidence of non-disability, the examining psychologist's conclusion "that plaintiff had only mild to moderate limitations in various areas of mental functioning because of depression"); *Burkett v. Barnhart,* 347 F. Supp. 2d 1079, 1084 (M.D. Ala. 2003) (including, as substantial evidence of non-disability, the determination of agency non-treating psychologists that claimant did not suffer from severe depression).

Rios also based her claim of disability partially on her bad knees. X-rays of both of Rios's knees taken on April 30, 2009, however, revealed "no significant bone or joint abnormality," that her "bones are in good position," and that there was "[n]o evidence of fracture" or "significant arthritic changes." Tr. at 338-39. Again, the inconsistency between Rios's allegations and the medical evidence weighed against Rios's credibility and provided a sufficient basis for discounting her testimony that she had disabling pain and limitations.

Rios also based her disability claim in part on her obesity. In his opinion, the ALJ included obesity as a severe impairment but found that it did not meet or equal a listed impairment, either by itself or in combination with others, and that it "has not eroded her occupational base to the point that she is disabled." *Id.* at 30. There is substantial evidence in the record to support this finding. Most significantly, as the Commissioner observes, Rios did not claim in at least one disability application document that obesity limited her ability to work. *See id.* at 169 ("What are the illnesses, injuries, or conditions that limit your ability to work? [Rios:] Numbness in hands, shortness of breath, back problems, arthritis, depression, [high blood pressure]."). Furthermore, while Rios did briefly discuss obesity at the hearing, *id.* at 48-49, no evidence in the record "indicates that a physician ever placed physical limitations on [Rios's] ability to perform work-related functions [specifically] because of her

obesity." *McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010). For example, after her examination on May 4, 2009, the physician noted in the margins of his report that Rios was "morbidly obese," but he did not include obesity in his diagnoses or limitations. Tr. at 343, 346.

Finally, Rios based her disability claim in part on carpal tunnel syndrome. A September 4, 2007, examination revealed, however, that Rios was "able to move all digits and wrist against resistance w/o pain," that she had "good bilateral radial pulses," that her "OK" and "thumbs up" signs were good, and that her grip strength was good. *Id.* at 272. She was assessed as having "wrist pain," prescribed medication, and released. *Id.* Subsequent examinations produced similar results; Rios's complaints of pain, numbness, and tingling radiating from her wrists would be both verified and somewhat softened by notations of her still-existing abilities. *See, e.g., id.* at 280 (examination on Oct. 25, 2007). Eventually, on March 20, 2008, Rios was diagnosed with carpal tunnel syndrome, greater on her right side than her left. *Id.* at 292. Even then, however, the examining physician noted that Rios's "median nerve has some fibers conducting fairly well" and that her "[u]lnar nerve studies are normal." *Id.* On April 16, 2009, Rios had surgery on her right wrist. *Id.* at 392. Immediately afterward, she reported "that her hand is feeling much improved." *Id.*[6] Rios was given no specific follow-up appointment after the surgery. *Id.* Less than a month later, on May 4, an examination revealed that because of her recent surgery, Rios could not hold a pen and write or pick up a coin, although she could touch her fingertips to her palm and opposing thumb to her fingers. *Id.* at 345. Furthermore, her grip in her left hand was 99% of normal, and her right hand was 80% of normal. *Id.* The physician at this examination prescribed several medications, but placed no other limitations on her functioning. *Id.* at 346-47. Two months after surgery, on June 25, Rios complained to a

---

[6] Notably, Rios contradicted this at the hearing, when she testified that the surgery did not help to relieve the pain in her right hand. *Id.* at 45.

9

physician about pain in both wrists; the physician, however, reported that while Rios's Tinel sign was positive bilaterally, she only had a "slight decrease in grip in both hands." *Id.* at 430. He then prescribed her Ibuprofen and Flexeril. *Id.* This yet again presents a mixed bag—Rios has some wrist impairment, but substantial evidence indicates that it is not totally disabling.

In summary, as can be seen above, substantial evidence in the record supports the ALJ's decision "that Ms. Rios has exaggerated her limitations and symptoms to some extent." *Id.* at 29. Rios's "symptoms are severe enough to preclude some work activity," the ALJ opined, just "not all work activity." *Id.* The ALJ's careful handling of this issue will be affirmed. *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("Tucker complained of severe impairments due to back and leg pain. However, a number of diagnostic tools, including an MRI, . . . showed relatively minor degenerative changes. . . . Despite the ALJ's concerns about Tucker's credibility, he did not entirely ignore Tucker's complaints but instead balanced Tucker's subjective complaints against the objective medical evidence . . . . Accordingly, we conclude that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.").

### 3. RESIDUAL FUNCTIONAL CAPACITY

Rios contends that the primary hypothetical question posed by the ALJ to the vocational expert at the hearing did not adequately encompass her exertional and non-exertional limitations. She also argues that the ALJ ignored an answer given by the vocational expert to a different hypothetical on cross-examination. At the hearing, the ALJ asked the following hypothetical question to the vocational expert:

> I want you to assume a hypothetical individual with the same age, education, and vocational profile as the Claimant. Assume the individual is restricted to the equivalent of light work. She could lift and carry no more than 20 pounds at a time, 10 pounds frequently. She can perform activities that require the field of walking or

standing as much as six hours in an eight-hour workday. The individual could not engage in frequent bending or crouching. I'm going to add that she needs to be able to alternate between sitting and standing. Mentally the individual is restricted to the equivalent of semi-skilled work. She could perform work where interpersonal contact is routine but superficial. The complexity of task is learned by experience while several variables; uses judgment within limits, and the supervision required is little for detailed and non-routine tasks. . . . Is there any alternative work for an individual with those specific limitations?

Tr. at 74-75. The ALJ then wrote, in his opinion, that Rios

[h]as the residual functional capacity to perform the full range of light/semi-skilled work as defined in 20 CFR 404.1567(b) and 416.967(b).

The claimant retains the residual functional capacity to lift and carry no more than 20 pounds at a time with frequent lifting and carrying of up to 10 pounds. She can perform activities that require a good deal of walking or standing (6 out of 8 hours). Non-exertionally, she cannot perform frequent bending/crouching and needs to sit/stand at will. Mentally, she can perform semi-skilled work, which is work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is little for routine, but detailed for non-routine.

*Id.* at 24 (bolding omitted). As is apparent, the residual functional capacity laid out by the ALJ is virtually identical to the hypothetical question that he posed at the hearing. Thus, while Rios construes her dispute as being with the ALJ's hypothetical question, what she is really contesting is the ALJ's step-four determination of her residual functional capacity. In essence, Rios is asserting that, because of her carpal tunnel syndrome, back issues, knee pain, obesity, and mental disorder, she does not have the residual functional capacity to perform light, semi-skilled work—or even sedentary work—for a sustained period of time. *See* Document #14, at 16-19.

While an ALJ must determine a claimant's residual functional capacity, and that decision must be supported by some medical evidence of the claimant's ability to function in the workplace, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (citation omitted). "Medical records, physician

11

observations, and the claimant's subjective statements about his capabilities may be used to support the RFC." *Id.* (citation omitted).

The issue of whether medical evidence supports the ALJ's residual functional capacity determination has largely been resolved in the previous section discussing credibility, for two reasons. First, the medical evidence that supports the ALJ's adverse credibility determination similarly supports his residual functional capacity finding. In short, substantial evidence indicates that while Rios suffers to some extent from carpal tunnel syndrome, back pain, knee pain, obesity, and depression, she is still able to perform light work, with certain restrictions. Second, the ALJ's legitimate finding of adverse credibility undermines Rios's claims to have met her burden of persuasion in proving disability and her residual functional capacity.

Having said that, a few more pieces of evidence that support the ALJ's residual functional capacity determination merit mention. First, the ALJ correctly noted that inconsistent accounts of Rios's daily living activities existed in the record. At the hearing, which was on May 25, 2010, Rios testified to very limited daily activities. Tr. at 50-68. On February 12, 2009, however, Rios filled out a function report indicating a slightly lesser level of restriction in certain areas. *Id.* at 194-201. To give an example cited by the ALJ, Rios testified at the hearing that her cooking activities were extremely limited and that she could not perform housework. *See id.* at 51 (Rios: "I just do microwave, and paper plates, too, because it's just too hard on me to try and do dishes. And I can't sweep, I can't vacuum anymore."). In the function report, however, she wrote that, in addition to microwaving food, she was able to fix sandwiches and frozen dinners. *Id.* at 196. Furthermore, she wrote that she washed dishes and vacuumed for short periods of time without needing help or encouragement. *Id.* The ALJ was entitled to take these discrepancies into account in determining

Rios's residual functional capacity and her credibility. *See Davis v. Barnhart,* 197 F. Appx. 521, 522-23 (8th Cir. 2006) (per curiam) ("ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities." (citing *Gray v. Apfel*, 192 F.3d 799, 803-04 (8th Cir.1999))); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) ("[T]he medical evidence and the level of Lawrence's daily activities contradict Lawrence's testimony regarding the severity of her pain and disability. The ALJ therefore properly discredited those complaints.").

Second, two different state agency medical consultants opined, after reviewing Rios's medical records, that Rios's limitations and abilities were similar to those eventually found by the ALJ. *See* Tr. at 353-60 (original review on May 19, 2009); *Id.* at 403 (affirming original review). Indeed, the ALJ found that Rios had less residual functional capacity than did the medical consultants, as the ALJ included Rios's need for a sit/stand option and appears to have taken into account Rios's mental limitations by determining that, "Mentally, [Rios] can perform semi-skilled work, which is work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is little for routine, but detailed for non-routine." *Id.* at 24.[7] This adjustment was supported by the psychologist's finding of a mild impairment in Rios's ability to sustain concentration. *Id.* at 335. The ALJ's reliance on these consultants is valid. *See Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2001) ("Instead of relying upon . . . inconsistent opinions, the ALJ properly based his functional capacity

---

[7] That the ALJ took into account Rios's mental limitations refutes Rios's argument that the ALJ's hypothetical—and thus, his residual functional capacity holding—is deficient because it did not "specifically mention depression and anxiety." Document #14, at 17. While it is technically true that the ALJ did not use the words "depression" or "anxiety," he incorporated what he viewed to be the limitations stemming from Rios's depression into the residual functional capacity. That is enough; Rios cites no case law indicating otherwise.

determination upon the opinion of the state agency medical consultant and upon the record as a whole.").

Third, objective medical evidence did not support the statement of Rios's treating physician that she could not reach, finger, or handle, for one-third of an eight-hour workday, Tr. at 405, which the vocational expert testified would render her unable to work at all. *Id.* at 77-78. Most significantly, the treatment history records from that physician and other physicians at the same clinic document no limitations given to Rios in regard to reaching, handling, or fingering. *See id.* at 418-432. To the contrary, several of the records indicate that Rios's extremities were "normal," *see, e.g., id.* at 424, while one report fails to mention Rios's wrist impairment at all. *Id.* at 427. Such inconsistencies further buttress the ALJ's residual functional capacity decision. *See Perks*, 687 F.3d at 1092 ("[P]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." (citation omitted)).

**4.     NEW EVIDENCE**

Finally, Rios argues that benefits should be awarded or the case should be remanded because the Appeals Council failed to consider new evidence submitted by Rios in requesting a review of the ALJ's decision. *See* Document #14, at 21-22. The new evidence consisted of records indicating that Rios attended various physical therapy sessions and received instruction on recommended back exercises. *See* Tr. at 240-48. The accompanying brief submitted by Rios to the Appeals Council, *id.* at 235-39, indicates that this evidence was presented in response to the ALJ's statement in his opinion that "the record does not document that Ms. Rios attended physical therapy." *Id.* at 27.

"[I]f a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence

if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) (all caps in original). The Court will assume that the evidence of physical therapy appointments was new, relevant, and related to the appropriate period of time. Even so, remand would not be necessary here because the record shows that the Appeals Council stated that it considered the additional evidence, that the evidence did not provide a basis for changing the ALJ's decision, and that the evidence had been added to the record. Tr. at 1-2, 5. By doing so, the Appeals Council complied with the relevant regulation. *See* 20 C.F.R. § 404.970(b). ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

"Where, as here, the Appeals Council considers new evidence but denies review, [the Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). For the same reasons already discussed in depth, the ALJ's decision in this case was supported by substantial evidence on the record as a whole, even assuming that the new evidence submitted by Rios disproved the ALJ's statements regarding her attendance at therapy. As can be seen above, the Court has not relied in any way on Rios's alleged lack of physical therapy in coming to its conclusion.

## CONCLUSION

It is true that the ALJ partially discredited both Rios and her treating physician in coming to his conclusion. That being said, it is not this Court's place to review the ALJ's decision *de novo*. Rather, as explained above, the Court must only review the ALJ's decision to see if it is supported

by substantial evidence. "Although we cannot say, given the facts of this case, that the ALJ's decision to deny benefits was the only tenable one, we have no trouble finding that the decision is supported by substantial evidence." *Rehder v. Apfel*, 205 F.3d 1056, 1060-61 (8th Cir. 2000).

For these reasons, the Court DENIES Rios's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 10th day of July, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE